**Mary Ann DAVIS, Appellant,**

v.

**LAMBERT OF ARKANSAS, INC., Appellee.**

No. 85-1148.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1985.

Decided Jan. 15, 1986.

Rehearing and Rehearing En Banc Denied March 14, 1986.

Samuel Turner, Jr., West Memphis, Ark., for appellant.

Stephen H. Biller, Memphis, Tenn. and David Solomon, Helena, Ark., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

ROSS, Circuit Judge.

Mary Ann Davis (Davis) appeals from a final judgment entered in the United States District Court for the Eastern District of Arkansas [1] in favor of Lambert of Arkansas, Inc. (Lambert) in an action alleging violations of Title VII, 42 U.S.C. § 2000e–2(a) and § 2000e–3(a), and 42 U.S.C. § 1981 (1982). For reversal Davis argues that the district court's ultimate findings of fact are clearly erroneous. For the reasons discussed below, we affirm.

## I. FACTS

Davis, a black female, began working for Lambert in November 1978. She was em-ployed as a stapler in Lambert's picture frame department. In October 1981 Davis was laid off, along with many other employees due to a severe drop in business.[2] In all, eleven staplers were laid off; eight blacks and three whites. All of the eleven staplers were recalled on November 9, 1981, except Davis. The three whites who were recalled had less seniority than Davis. Davis received a permanent layoff notice in January 1982.

There existed a collective bargaining agreement between Lambert and Davis' union. The contract was interpreted to require Lambert to recall the most senior worker as between equally qualified workers, but to permit Lambert to recall a junior worker who was superior in qualifications and more skillful, efficient and productive. Davis does not challenge this interpretation of the collective bargaining agreement.

In March 1982 Davis filed an EEOC charge alleging that she was not recalled because of her race and subsequently filed this lawsuit under Title VII and 42 U.S.C. § 1981. During the pendency of the lawsuit, Davis was tested at the Employment Security Office, scored well on a test, and was sent to Lambert to apply for a job in May 1984. Lambert told Davis that her case against them was set for trial in June 1984 and that she should come back after it was over. Davis amended her complaint to add a claim of retaliation for Lambert's failure to hire her in May 1984.

All of Davis' claims were tried to the district court in December 1984. Following the presentation of evidence the district court stated its findings of fact and conclusions of law from the bench. The district court found in favor of Lambert on all claims and dismissed Davis' complaint. Davis now appeals. The case was submitted on briefs without oral argument.

1. The Honorable Garnett Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

2. The bargaining unit fell from about a hundred in the summer of 1981 to approximately 30 towards the end of 1983. In 1984 it was back up to 64, six of whom were white and the remaining workers were black.

## II. DISCUSSION

### A. FAILURE TO RECALL

Davis claims that Lambert did not recall her following the layoff in October 1981 because of her race. In order to prevail on her claims of discrimination under Title VII or 42 U.S.C. § 1981[3] Davis bears the ultimate burden of persuading the trier of fact that Lambert intentionally discriminated against her. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). A discrimination claim which relies on a disparate treatment theory has three phases: first, the plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination; second, if the plaintiff meets her initial burden of proof, then the burden shifts to the defendant to show a legitimate, nondiscriminatory basis for the disparate treatment; and third, should the defendant carry this burden, then the plaintiff has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered were a pretext to cover a discriminatory motive. See *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 602–03 (8th Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984).

In the present case regarding the failure to recall claim, after Davis made out a *McDonnell Douglas* prima facie case of racial discrimination, Lambert offered evidence that the white employees recalled to work out-produced Davis and that under the terms of the bargaining agreement, it could rehire less senior workers if they were better qualified. There is evidence in the record that Davis' performance declined in the months preceding 1981 and that the company attempted to work with her to improve her production, but that there was no improvement. Davis claims that she showed Lambert's articulated reason to be pretextual by showing that staplers worked on a line in groups placing completed frames in a common container and thus there was no way anyone could determine how many frames each stapler completed.

The district court found that Lambert's decision to not recall Davis and to permanently lay her off had "nothing to do with race." The court credited the testimony of Lambert's decisionmakers as honestly believing that they could recall less senior people if they were better qualified and that Davis was not as skillful, productive or efficient as the other staplers. The district court expressly found that Lambert's stated reasons were "its true reasons."

In accordance with Rule 52(a) of the Federal Rules of Civil Procedure the findings of the district court may not be set aside unless those findings are clearly erroneous. If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Further when findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference to the trial court's findings. *See Anderson v. City of Bessemer City*, —— U.S. ——, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

Having carefully read the record on appeal and the briefs, we conclude that the district court's findings on this issue were not clearly erroneous. Giving due regard to the district court's opportunity to judge the credibility of witnesses and to resolve conflicts of testimony, we cannot say that Davis' evidence establishes intentional racial discrimination. There is ample evidence in the record to support the district court's findings.

---

**3.** The principles for allocating the burden of proof in section 1981 suits are the same as those employed in Title VII actions. *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 602 n. 6 (8th Cir. 1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984), *citing Kenyatta v. Bookey Packing Co.*, 649 F.2d 552, 554 (8th Cir.1981).

## B. RETALIATION

■ Davis also claims that the district court made clearly erroneous findings when it dismissed her claim alleging retaliation in violation of section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a).[4] Davis argues that Lambert's failure to rehire her in 1984 constituted retaliation for her filing the lawsuit in 1982.

Whether Lambert retaliated against Davis is a fact question which required the trial court to determine whether Lambert "was motivated by a desire to retaliate." *Benson v. Little Rock Hilton Inn,* 742 F.2d 414, 417 (8th Cir.1984); *Sisco v. J.S. Alberici Construction Co.,* 655 F.2d 146, 150 (8th Cir.1981), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982); *see also Kellin v. ACF Industries,* 629 F.2d 532, 536 (8th Cir.1980). After hearing the evidence, the trial court made the following findings:

> The Court does not interpret the defendant's actions as a refusal to hire the plaintiff in retaliation for her having filed the EEOC claim or this lawsuit. * *
>
> The Court finds that the defendant, through Mr. Kroul, in good faith believed that it would be improper to even discuss the reemployment matter with the plaintiff in view of the imminent trial setting. * * * The Court finds the decision was not made in retaliation for the plaintiff's having filed the claim or the lawsuit. The Court credits Mr. Kroul's testimony as to the conversation. Specifically the Court finds that Mr. Kroul did not say that the company would in no way consider rehiring * * * [Davis] because of her having filed a lawsuit or the claim.

Transcript at 280–81.

The district court correctly focused on Lambert's motivation and concluded that the actions were not taken in retaliation for her Title VII action. We have carefully reviewed the record on this issue and we find that Davis' evidence did not establish that Lambert was motivated by a desire to retaliate against her because she filed a lawsuit. *See Benson, supra,* and *Sisco, supra.* The district court's finding that Kroul possessed no improper motive in not hiring Davis in May 1984 is supported by the record and we cannot say that the finding is clearly erroneous. *See Burrows v. Chemed Corp.,* 743 F.2d 612, 617 (8th Cir.1984).

## III. CONCLUSION

Having found that the district court's ultimate factual findings are not clearly erroneous, we affirm the judgment of the district court. Each party is to pay its own costs and attorneys' fees incurred in connection with this appeal.

BRIGHT, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in the majority opinion on the issue of Lambert's failure to recall Davis. However, I believe that the district court erred in dismissing Davis' retaliation claim. On the record, it is undisputed that (1) Davis filed an EEOC charge against Lambert; (2) thereafter, Lambert failed to rehire Davis when she reapplied for employment; and (3) at that time, Lambert's vice president Kroul told Davis he could not consider her application in view of her pending EEOC suit against Lambert. By showing that this adverse employment consequence flowed from her participation in a protected activity, Davis met her burden of establishing a prima facie case of retaliation. *Robinson v. Monsanto Co.,* 758 F.2d 331, 335 (8th Cir.1985); *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981). The burden then shifted to Lambert to articulate a legitimate nondiscriminatory reason for not rehiring Davis. *Womack,* 619 F.2d at 1296.

---

**4.** Section 704(a) provides in relevant part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees * * * because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

However, Lambert offered no reason other than the pendency of the EEOC suit for not considering Davis' application in May of 1984. Davis' pursuit of the EEOC claim was a protected activity and, without more, will not suffice as a reason for not reinstating Davis.

Because Lambert failed to rebut Davis' prima facie showing of retaliation, the trial court erred in its consideration of the retaliation claim, and in determining that Lambert possessed no subjective motive to retaliate. The determination of whether a defendant was motivated by a desire to retaliate arises only after the defendant has offered a legitimate nondiscriminatory reason for the adverse employment decision. This Lambert failed to do. Therefore, because Lambert failed to rebut Davis' prima facie showing of retaliation, I would hold that the district court erred in not finding Lambert liable for retaliation.