**In the Matter of the ESTATE OF Clarisse DEAN.**

**William BRANDECKER, as personal representative of the Estate of Clarisse Dean, Respondent,**

v.

**Karen MORRIS, Douglas Bevans, Michelle Coigny and David Lee Anderson, Appellant,**

**Todd Gene Anderson, Respondent.**

No. WD 53953.

Missouri Court of Appeals, Western District.

March 17, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1998.

Application for Transfer Denied June 16, 1998.

Richard Koehler, Butler, for Appellant.

Ronald Smull, Columbia, John Irvin, Butler, for Respondent.

HANNA, Judge.

William Brandecker, the personal representative for the estate of Mrs. Clarisse Dean, filed a discovery of assets suit and named as defendants the beneficiaries of Mrs. Dean's will and trust. Mr. Brandecker's suit pleaded actions for discovery of assets, declaratory judgment, establishment of a constructive trust, and an accounting. The defendants are four great-nieces and nephews of Mrs. Dean. The defendants pleaded the affirmative defense that Mrs. Dean lacked the mental capacity to revoke her trust agreement. Following a bench trial, the probate division of the circuit court determined that there was a fiduciary relationship between Mrs. Dean and Ms. Karen Robey Morris as trustee for Mrs. Dean. The court found that Ms. Morris expended trust funds for her personal use which was a breach of her fiduciary duty. The court also ordered an accounting. The court specifically found that Mrs. Dean executed a document titled "Revocation of the Trust Agreement" dated January 26, 1993, which served to revoke her trust agreement.

The defendants raise six points of trial error: (1) admitting inadmissible evidence; (2) denying the defendants a jury trial; (3) failing to make a finding of Mrs. Dean's testamentary capacity on which Brandecker had the burden of proof; (4) refusing admissible evidence; (5) entering a judgment which is not binding on the defendants; and (6) allowing Brandecker to proceed even though he was not the real party in interest due to a conflict of interest. Generally, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In their first point, the defendants claim that the probate court erred in denying their motion *in limine* which requested that certain evidence be excluded. Defendants argue that the revocation documents of July 2, 1991 and January 26, 1993, the interpretation of the amended trust agreement, and evidence concerning the acts of Ms. Morris should not have been allowed into evidence. The defendants do not state, either in their point relied on or in the argument portion of their brief, that they made their objection to the evidence at the time it was offered.

■ An adverse ruling on a motion *in limine* preserves nothing for review. *See Graf v. Wire Rope Corp. of America*, 861 S.W.2d 588, 590 (Mo.App.1993); *Anderson v. Rojanasathit*, 714 S.W.2d 894, 895 (Mo.App. 1986). A party must object to the introduction of the evidence at the time it is offered if they wish to preserve the issue as an error on appeal. *See Graf*, 861 S.W.2d at 590. Having failed to object when the evidence was offered at trial, they have not preserved their record for appellate review. Point denied.

■ The defendants contend that Mrs. Dean's mental capacity was placed in issue by their affirmative defense that she lacked the capacity to execute the document which revoked her trust agreement and that the court failed to make a finding of fact on the issue of Mrs. Dean's mental capacity. As in the case of deeds and wills, where it is sought to have a trust declared invalid because the settlor lacked the mental capacity to execute a valid trust, the burden is upon those seeking to have it declared invalid to prove that the settlor lacked such mental capacity at the time the settlor executed the trust instrument. *Webb v. St. Louis County Nat'l Bank*, 551 S.W.2d 869, 874 (Mo.App.1977).

Ms. Debra Hopkins, an attorney with the Caskey law firm, met with Mrs. Dean at her hospital room in January 1993. Ms. Hopkins testified that she explained to Mrs. Dean the provisions in her revocable trust and the 1991 amendment. Then, they discussed various alternative documents that Ms. Hopkins had drafted that served, in different ways, to alter Mrs. Dean's trust agreement.

Ms. Hopkins testified that they discussed the current beneficiaries under the trust, specifically, they discussed the church as a beneficiary. Ms. Hopkins recommended an alternative document to effectuate Mrs. Dean's wishes, and Mrs. Dean responded by requesting time to think about it. Ms. Hopkins also testified she had been told, prior to this meeting, that Mrs. Dean would probably want to revoke the trust agreement. Mrs. Dean then explained that she wanted to revoke the trust agreement because she did not want Ms. Morris to act as her trustee. Mrs. Hopkins offered Mrs. Dean the revocation document which is now at issue. Ms. Hopkins witnessed Mrs. Dean's signature on the document, and she notarized her signature.

■ In order to make a case for a jury on the issue of testamentary capacity, the proponent must establish a *prima facie* case of testamentary capacity. Once the proponent has done so, the contestant is required to adduce some substantial evidence that the testator did not have the mental capacity to make a will. *Rhoades v. Chambers*, 759 S.W.2d 398, 402 (Mo.App.1988); *See also Matter of Estate of Mitchell*, 610 S.W.2d 681, 684 (Mo.App.1980). The contestants are then required to adduce some substantial evidence that she lacked the testamentary capacity to make and execute the revocation.

The defendants' evidence of Mrs. Dean's mental capacity, as set forth in the defendants' brief, was that she had physical problems such as congestive heart failure, bronchitis, and high blood pressure. She was under the care of a nursing home and remained there until her death. Their evidence, and argument to this court, concentrated on Mrs. Dean's lack of hearing and her poor eyesight. The testimony from her doctor and other witnesses was that she was very hard of hearing. However, there was no evidence that Mrs. Dean was diagnosed with a psychiatric or mentally disabling condition. There was no evidence that she was taking any mind-altering medications. There was, in fact, no indication that there was any mental component to her disability. Her attending physician, who was called by the defendants, was not asked his opinion about her testamentary capacity.

Many Missouri cases confirm the accepted rule that evidence of sickness, old age and eccentric behavior of a testator, taken alone, are not sufficient to overturn a will on the ground of mental incapacity. For example, in *Wright v. Kenney*, the testatrix entered a nursing home primarily because of her physical disabilities and continued to reside there until her death. 746 S.W.2d 626, 628 (Mo. App.1988). To prove mental incapacity, the contestant relied upon entries in the medical records of the testatrix, which showed congenital, organic brain damage, organic brain

syndrome, senility, and that she was confused and senile. *Id.* The court held that the point did not warrant extended discussion. "Eccentricities and an organic brain syndrome or senility do not establish the absence of testamentary capacity." *Id.* at 631 (citing *Lewis v. McCullough,* 413 S.W.2d 499 (Mo. banc 1967)). The Missouri Supreme Court has stated that:

[M]ere proof of illnesses, or imperfect memory, or forgetfulness of names and persons, or old age with its attendant physical and intellectual weaknesses, or mental confusion, or arteriosclerosis, either singly or in combination, ... are insufficient to invalidate these deeds.

*Wright,* 746 S.W.2d at 628 (quoting *Vineyard v. Vineyard,* 409 S.W.2d 712, 717 (Mo.1966)).

Also, in *Hodges v. Hodges,* the court held that failing eyesight and poor hearing on the date that the document was executed did not make a submissible case for the jury, either on the issue of the execution of the document or the testamentary capacity. 692 S.W.2d 361, 373–74 (Mo.App.1985). To the same effect, in *Morse v. Volz,* evidence of sickness, old age, and eccentric conduct of the testator, taken alone, were held to be insufficient to invalidate a will on the ground of mental incapacity. 808 S.W.2d 424, 430 (Mo.App. 1991). As such, the issue of testamentary capacity should not have been submitted to the jury. *Id.* The evidence of the lack of mental capacity in *Morse* was depression, reclusiveness, ill-temper, memory lapses, failure to recognize his son, neglecting to tell his son of his courtship and impending marriage, and other medical evidence. This listing of infirmities did not identify facts other than those attributable to illness, old age, and eccentricities from which a permissible inference of the testamentary incapacity of the testator derives. *Id.* at 430.

Mrs. Dean was a 93–year–old woman who, not unexpectedly, had physical disabilities, was very hard of hearing, and had poor eyesight. As a matter of law, this evidence fell short of the required substantial proof of her lack of testamentary capacity to execute the revocation of her trust. The court specifically found that the January 26, 1993, revo-

cation was effective to revoke the trust agreement. Implicit in the court's finding was that Mrs. Dean had the mental capacity to execute the document revoking her revocable trust agreement and, therefore, the trial court did not err in "failing" to make a finding of fact on the issue. Point denied.

▪ The defendants next argue that the court erred in denying their request for a jury trial. Section 473.340(2)[1] provides that any party to a discovery of assets suit is entitled to a jury trial. A suit to discover assets is an action at law. *See Matter of Estate of Mitchell,* 610 S.W.2d 681, 684 (Mo. App.1980). However, the title of the action is not determinative of whether the action is legal or equitable. The lawsuit pleaded various actions which included a discovery of assets claim, declaratory judgment, and an imposition of a constructive trust. It also included a request for an accounting of the following assets: (1) that title to certain real estate that was in the joint names of Mrs. Dean and Ms. Morris be transferred to the Dean estate and that a constructive trust be imposed on the assets that were misappropriated by Ms. Morris; (2) that the revocable trust agreement of January 30, 1989, be revoked and that the trust assets be transferred to the personal representative of the Dean estate; and (3) that Mrs. Dean's property, which had been transferred to Ms. Morris, be returned to the estate or, in the alternative, that a money judgment be entered against Ms. Morris for the value of the property used by her. The suit sought both equitable and legal relief.

▪ There is no right to a trial by a jury in an equity case, and thus the right to a jury trial depends on whether the cause is tried at law or equity. *State ex rel. Willman v. Sloan,* 574 S.W.2d 421, 422 (Mo. banc 1978). When a court has concurrent jurisdiction to hear both legal and equitable claims, *Estate of Goslee v. Patrick,* 807 S.W.2d 552, 554 (Mo.App.1991), it may invoke equitable principles "despite the existence of an adequate remedy at law." *Hammons v. Ehney,* 924 S.W.2d 843, 847 (Mo. banc 1996) (citing *Estate of Cantonia,* 684 S.W.2d at 595).

1. All statutory references are to Missouri Revised Statues 1994, unless otherwise indicated.

Once a court of equity asserts its jurisdiction, it will retain jurisdiction until it decides all of the issues adequately and fairly between the parties. *See Stafford v. McCarthy*, 825 S.W.2d 650, 658 (Mo.App.1992).

Moreover, the defendants' right to a jury trial is thwarted by our holding that they failed to make a submissible case. We have determined that the defendants failed to make a submissible case as to whether Mrs. Dean had the mental capacity to execute the document revoking her trust agreement. If the defendants were entitled to a jury trial, it would serve no purpose to reverse the case and remand it for a jury trial because the evidence that Mrs. Dean lacked the mental capacity to execute the document failed as a matter of law. Point denied.

■■■ Defendants next claim that the court erred in sustaining objections to the defendants' question to Dr. VanBiber, Mrs. Dean's attending physician, about whether Mrs. Dean could engage in a lengthy conversation during the latter part of 1992 and the early part of 1993.[2]

■■■ Under § 490.065, the determination of the admissibility of expert testimony is left to the sound discretion of the trial court. *See Bowman v. McDonald's Corp.*, 916 S.W.2d 270, 276 (Mo.App.1995). A trial court does not usually commit reversible error by mere exclusion of expert testimony, even if the offered testimony is relevant and admissible. *Id.* A trial court's ruling as to the exclusion of evidence will not ordinarily be overturned unless it is an abuse of discretion. *Id.* at 276. An abuse of discretion occurs when the trial court's ruling is so arbitrary and unreasonable that it shocks this court's sense of justice and it is clearly against the logic of the surrounding circumstances. *Turnbo by Capra v. City of St. Charles*, 932 S.W.2d 851, 854 (Mo.App.1996). A trial court, however, is authorized to exclude evidence which is irrelevant, immaterial

or which is collateral to the proceeding. *See Bowman*, 916 S.W.2d at 276.

The testimony at issue was whether Ms. Dean could carry on a lengthy conversation. The answer, if given, would have doubtful probative value in determining Mrs. Dean's mental capacity to execute the revocation document. Surprisingly, Dr. VanBiber was not asked his opinion about her mental capacity to execute the document, which was the issue that the court was asked to decide. We cannot say that the trial court abused its discretion in sustaining the objection to the question. *See id.* Point denied.

■■■ The defendants next argue that since the judgment does not make any reference to them, it is not binding on them. This argument is without merit. A court in equity has the power to adjudicate issues that are within the pleadings and the claims for relief. *See Blando v. Reid*, 886 S.W.2d 60, 67 (Mo.App.1994). The court's judgment responds to the issues raised and the relief requested. Specifically, the court's judgment adjudicates the interests of the defendants under the trust agreement.

■■■ The defendants continue to advance their argument that Brandecker had a conflict of interest because he knew of the discrepancy in the disposition under the will and trust agreement. A personal representative is under a duty "to look after the interests of the estate and to act on behalf of *all* persons who have an interest in the estate." *Matter of Stroh*, 899 S.W.2d 534, 538 (Mo.App.1995)(quoting *Estate of Veselich v. Northwestern National Cas. Co.*, 760 S.W.2d 564, 569 (Mo.App.1988)) (emphasis added). *Mathews v. Pratt*, 367 S.W.2d 632, 636 (Mo. 1963). "[A] personal representative is liable for want of due care and skill with the measure for due care and skill being that which a prudent person would exercise in the direction and management of their affairs." *Estate of Veselich*, 760 S.W.2d at 569.

---

**2.** The defendants made no offer of proof as to what the doctor's answer would have been if he had been allowed to answer. Dr. VanBiber was competent to give testimony concerning Ms. Dean's mental capacity around the date that the revocation was executed. See Disbrow v. Boehmer, 711 S.W.2d 917, 923 (Mo.App.1986). An

appellate court will not review evidence excluded by the trial court unless the complaining party makes a specific and definite offer of proof at trial. See Belleville v. Director of Revenue, 825 S.W.2d 623, 625 (Mo. banc 1992); State Farm Mut. Auto. Ins. Co. v. DeCaigney, 927 S.W.2d 907, 911 (Mo.App.1996).

Brandecker properly initiated this suit on behalf of the estate. He has a fiduciary duty to place all assets owned by Mrs. Dean into her probate estate. While this duty may interfere with the trust beneficiaries, it does not illustrate a conflict of interest under the will. Point denied.

The defendants' final point repeats earlier claims of error and, as such, an extended discussion would serve no useful purpose or have any precedential value. Point denied. Rule 84.16(b), V.A.M.R.

The judgment is affirmed.

LOWENSTEIN, P.J., and BRECKENRIDGE, J., concur.